Good morning, Your Honors. Paul and Jonah, on behalf of the appellant Nicholas Vena, and may it please the Court, I'd like to reserve two minutes for rebuttal. All right. This case presents important questions about the integrity of our judicial system. The district court's holding, which allowed the defendants to evade civil liability for their egregious misconduct, would immunize lawyers when they take actions that they know or should know would lead to the disqualification of a judge. I'd like to address the due process claim and then the issue of duty for the tort claims. What would have happened if these other engagements had been disclosed? What would have happened, Your Honor, is that... That's not itself an ethical violation to have the other engagements and to disclose them. It seems that the issue arises because they weren't disclosed. Well, two points. First point, Your Honors, that I think that, obviously, and put this in the briefs, Mr. Vena would have immediately moved for disqualification. And under the governing standards, that motion would have been granted. And I do think there's also an argument that... Can I ask you, though, why is that? Why would it have been granted? Because of the sheer volume of matters and the size of the pecuniary interest involved and consistent with the trial court's determination that this... The trial court actually held and noted the standard that when the reasonable man would entertain doubts concerning the judge's impartiality, disqualification is mandatory. The court found that there was a duty to disclose and a failure to disclose, and on that basis ruled that all of Judge Lowe's orders were void. And that really does... I was kind of wondering whether this is, you know, if it had been disclosed, if Judge Lowe had been retained by the firm, you know, retained by the parties in matters that the firm had before her in six to eight cases. I mean, where do we know that that in and of itself would violate some ethical obligation? I think Canon 6... Wouldn't it depend on how many cases Judge Lowe had or what the market was? I think, Your Honor, given the sheer volume of the cases and the time period, all of these other matters took place during the course of the custody trial. The sheer volume of the matters in the short time period would, I think, require disqualification. And certainly our position is that Mr. Ravenna would have moved for disqualification, and that's the short answer to the court's question, which is if they were disclosed, he would have moved for her disqualification, disqualification would have been granted. So the first part of the analysis really is straightforward. The judicial determination that her orders were void really ends the analysis for the first part of the threshold issue for due process. And that's because, Your Honor, justice has to satisfy the appearance of justice, and due process is presumed violated whenever the judge has a pecuniary interest in the case. Could I ask just three quick, fat questions? Did your client select Commissioner Lowe? What happened, Your Honor, was that Commissioner Lowe was proposed by Moore, Shulman, and Moore, in addition to another judge. Our client's counsel agreed to the— And that was Mr. Herbert? No, that was actually Ms. Yelman. Was Herbert also counseled to your client at all? Not at that time. Later, after Ms. Yelman retired, Mr. Herbert became counsel. And had Herbert been appearing in front of Commissioner Lowe? Isn't that what Attorney Shulman said? There's an argument that's very misleading in the papers that tries to suggest that since one of the matters with the Moore, Shulman, and Moore firm also involved Herbert, and therefore, you know, trying to undermine the theory. But at that time, Herbert was not counsel. Okay, but the district court made that finding, right, that Mr. Herbert had appeared also in front of Commissioner Lowe? Well, that's not in dispute. Yeah, Mr. Herbert had one of the undisclosed mediations with Moore, Shulman, and Moore? Yes. So it plays with Mr. Herbert. At the time, Mr. Herbert was not counsel for Mr. Vennel. But it seems to be a little bit difficult to say if all parties agreed to Lowe and all attorneys are mediating cases in front of Lowe that there was bias, this was essentially a bribe as opposed to a contract to mediate? No. So, Your Honor, there were – so what happened was after Judge Lowe was – after the parties agreed to utilize Judge Lowe, the private judge, the Moore, Shulman, and Moore firm retained her for two matters. Those two matters in November of 2020 and February of 2021 were not disclosed to any of the parties. You wanted to see continuing disclosure. Well, that's what's required under the law. And she did disclose that during the course of her work on this particular case, she would continue to receive additional cases. So, Your Honor, that's a very important point that I want to briefly address. There's three reasons why that argument is meritless. The argument – it was the centerpiece of the district court's analysis and the appellee's brief. First of all, the judge cannot opt out of her Canon VI obligations. That's clearly set forth in the Jolie case. Lawyers can't waive their ethical obligations. That's clearly set forth in the Shepard Mullen case. But this is the important point that I think I want to make sure is clear. Constitutional rights can only be waived if there's clear evidence that the person acted on their own volition with full understanding of the consequences of the waiver. And this is where the record sites are important. There's four record sites, I think, that help explain why this argument is frivolous. The stipulation to retain Judge Lowe was dated September 8, 2020. That was the document that the parties signed. On that document, it clearly says that Judge Lowe is going to follow Canon VI. That's at 6 ER 1206 to 1208, and it says nothing about not disclosing new matters. Ten days later, a notice came in the mail, and that was not signed by any of the parties, and it had a cover letter, and the cover letter, which is 8 ER 1702, again reiterated that she's going to comply with her Canon VI obligations on the front page. Enclosed with that cover letter was a disclosure where Judge Lowe later admitted she checked the wrong box. That's at 6 ER 1253 to 57, and it said that she would take on new matters and not disclose them. But all counsel had access to that incorrectly checked box. That's correct, Your Honor. So you could have objected at that point and just said that's inconsistent with your duties. Your Honor, here's the important point. That's correct. It was sent to the parties with a cover letter saying she's going to follow Canon VI, and then the end of the disclosure also said I'm going to follow Canon VI. And in addition, Judge Lowe never intended that to be something that the parties would rely on because she conceded later that that was the wrong box because when she said, it was an inadvertent failure to disclose. So basically— Finish your thought, and then I have a question. So the main point here, Your Honor, is to summarize that thought, is that this checked box, which really is, again, like the focus of the other side, was hidden, admittedly, mistakenly checked by the judge, legally invalid, contradicted by statements before and after it, and both defendants—this is important too—Schulman and Westerman admitted they never saw it. So they never relied on that disclosure to support their unlawful conduct, even if they could. And it's telling, I think, that a major defense relies on an invalid and illegal contract term. So we're talking a lot about Judge Lowe, but actually the case is against the law firm, right? So the question I have—and hopefully you may allow me to go a little over this. So your argument is that Moore-Schulman has duties, whether from Section 1983 or from state law, to do something in regards to this situation. Do you believe the duties here are different because the judge is a private judge as opposed to just a state court judge, for example? I absolutely think that the unique nature of the private judging arrangement, where you're having parties not only choose the judge but pay for the judge, I think that creates a whole different framework that, yes, that's what we're focused on here. It's completely distinguished. Is there any authority that gets into any of these issues? To the case—when you say these issues, Your Honor, I— Well, with respect to basically a law firm's duty to essentially monitor or disclose ethical violations by a private judge. The Rogozinsky case is directly on point, Your Honor, and it's very much worth a review. It was— But there was no legitimate work done in that case. I'm sorry, Your Honor. Those are just gratuities. There was no legitimate work being done in Rogozinsky's case. There was a timeshare—you mean in exchange for the gift? Right, yes. Well, it was actually very factually similar. It was a private judge. The opposing counsel's lawyer made a gift to the judge and took Kerry's favor. Presumably it was a theory. So when you say no work done, I mean he was working on the case. But, I mean, is your argument that Moore Shulman retained Judge Lowe as a gift again and again to basically pay her?  There is a—the argument is during the course of this trial, Mr. Shulman himself is mediating cases with Judge Lowe and showing up to trial the next day, and none of that is being disclosed. And obviously the theory is they're doing that to gain an advantage. They're sending her—every mediation is a $5,000 engagement. There was eight undisclosed mediations during a very short period of time. How many other judges—what does the record show about how many other judges, private judges, Moore Shulman was working with at the time? I don't know if we have that information, Your Honor. I don't know if—what I do know is that the number of mediations that they had with Judge Lowe doubled based on historical patterns. It doubled. So right when they got Judge Lowe on this case, which is a high-value, high-conflict marital dissolution case, they sent her double the amount of the historical business during a very short window of time. Is that an ethical violation to retain Judge Lowe if the other side agrees in numerous cases? I mean, I hear you on the disclosure point, but short of that, is it an ethical violation for a law firm to retain the same private judge in all of its matters? So that's—Your Honor, I would point the court to two sources of law. First, I would point the court to the Rogozinski case, which very clearly held—and I'm not going to read all the quotes because I'm running out of time. Very clearly held that, yes, that is an ethical violation. It's a breach of the standard of care, and it also qualifies for purposes of 1983 because it addressed that as well. But in addition, our expert testified at his deposition, and he's a state bar expert at 7 ER 1601, and his report is at ER Volume 12 and made it very clear that, yes, in fact, this is an ethical violation. But just to give you one of the quotes from the Rogozinski case— You're actually over time, counsel. Can I ask one question? Just quickly on bias, how would you respond to the thought that there couldn't be bias if the successor judge, the public judge, then issues an outcome that's worse than the judge whom you're saying was biased? Two points. Point one, it's legally irrelevant because it's the appearance of bias, the appearance of impropriety, which the state court already determined existed. But point two—and this is actually important—the district court completely ignored a 20-plus page declaration by Terry Yellman, counsel, in the Marital Dissolution Action Act that's at 11 ER 2454 through 2474, and it explains in great detail the bias, which is a factual question. No court can adjudicate that. It's very factually intensive. Okay. Thank you, counsel. Yes, sir. All right. Thank you, counsel. Our questions took you over time, so I'll put two minutes back on the clock for your rebuttal. Good morning. Good morning, Your Honors. Annie Frazier on behalf of Julie Westerman, David Schulman, and more Schulman and more. First, I want to apologize for my voice. This is a lot better than it was a few days ago, so I can squeak out words, but it's a little raspy. We're glad you're feeling better. Thank you. What I just heard in argument is a lot about Judge Lowe and Judge Lowe's duty. And Judge Lowe's obligations. The chief complaint in this case appears to be about the private judging system, which is authorized by judicial counsel, which was criticized in the concurring Jolie opinion and was a big part of the, you know, appellant's arguments. A system that Nicholas Vina and his attorneys requested to participate in, paid to participate in, and were active participants in that, in the same manner that my clients, the attorney defendants, were. Does a law firm, you know, when you're working with private judges, have any duties as to the other side if they become aware that or there's reason to think the private judge may be violating her ethical obligations? You can't impute the duties of the judge to the duties of the attorney. Now the duties, an attorney has specific ethical duties, and certainly if an attorney knew another attorney or a judicial officer was violating their duties, that does raise some, that would raise something. But in terms of disclosure here, there's this conspiracy theory that appellant is arguing is basically that the attorney MSM was taking in other cases and intentionally steering them towards Judge Lowe, and Judge Lowe, with a wink and a nod, was not disclosing so that she could get more money. There's no support for these outlandish conspiracy theories. Just, I mean, it was a two-week trial, and do you dispute the amount of money that she received from the law firm during the same two-week trial? For this trial, she received money from both parties. Right, no, I know, but during that time. Certainly she was paid for her work. I'm sure she was not doing it for free. So yeah, she was receiving other business. And that wasn't disclosed. That was not disclosed. That's Judge, Commissioner Lowe's responsibility to disclose it. Right, but if you, sorry. Go ahead. No, no, no. Well, I guess, does the law firm have any disclosure obligations here? I mean, what if a law firm had retained Judge Lowe in 500 cases over that same one-month period? Is there no obligation to disclose that to the other side? The obligations are clearly for the judicial officer to disclose. Those are explicit, and those are very clear. Now, if you're going to infer a nefarious intent that they were doing this business in order to somewhat bribe her, then that's a different issue. But that is the Phelps-Dodge case, right? If there's substantial cooperation, you aren't disputing that she's equivalent to a state actor.  Okay, so let me just finish the question. Okay. So if the law firm is substantially cooperating with her, so is under Dennis v. Sparks, to give her money so that she will rule favorably. Your Honor, there's absolutely no evidence of that. And I just want to clarify a couple of things on that point, because the court asked the opposing counsel, well, didn't your client request Judge Lowe? And I just want to make it clear, he didn't answer that question directly. The answer is yes. Nicholas Vina was the one who requested to do private mediation. Nicholas Vina's attorney said there are only four people that would be qualified to do this type of a complex case. Does this matter? I mean, this is relevant, I agree, but how relevant is it? Because if Judge Lowe had had some improper relationship with somebody in the Moore-Schulman firm and that that was not disclosed, I don't think we would be here saying, well, Nicholas Vina agreed to hire her, so these later issues don't matter. So I guess it comes back to the question of what is the law firm's duty to disclose the amount of business to the other side, at least where the judge has not done so? Well, keep in mind that as of the date that the contract was signed, 10 days later, Jantz and Judge Lowe did do a complete disclosure. At that point, the disclosures were done. And to clarify, the cases after that, there were eight cases where MSM retained Commissioner Lowe after that. None of them were Julie Westerman's cases, and she was chief counsel for Christine Vina. Three of those cases were Schulman's cases, and in all three of those cases, it was opposing counsel who suggested Commissioner Lowe. Does the record show how many other private judges Moore-Schulman was using around this time? It does not. Does the record show anything? You heard my line of questioning about Mr. Herbert and whether he was appearing in front of Commissioner Lowe with no disclosure. Do you recall that? I thought it was in the Schulman affidavit. Yes, and I think, yes. And so it was in the Schulman affidavit that one of those counsel was Mr. Herbert. Of the three matters that Mr. Schulman had with Commissioner Lowe, one of them was Mr. Herbert. Herbert was the one who requested Judge Lowe. Two others. In the reply brief, I need to correct something. So am I right? Is it oversimplifying the record to say that counsel for both sides were appearing in front of her in spite of her checked box? That's correct. Okay. And another point on that, and then I want to get to, there is a mistake in the reply brief that I want to point out, but I want to answer another question on that. And that is that in the disclosures, and this relates to the line of questioning of my opposing counsel, there was a question of, you know, was this, how much business this was. And I just want to make clear, they, and I guess the questioning was, well, if he would have known there was, you know, one more case, two more cases, three more cases, would he have not agreed? Would he have moved to disqualify? The disclosure was that she had a significant professional relationship with MSM. He knew that going in. He still wanted to use Commissioner Lowe. Was there a significant increase in the number of cases that MSM sent to Commissioner Lowe as compared to before, or is that not in the record either? The record's not. There's no quantitative analysis of that that, you know, opposing side says, you know, during this time period. But I think you could also look at what was going on at the time and why actually the VINAs were there. It's because there was a back load of cases after COVID and everything shut everything down. So the VINAs came in. So I don't think you can attribute that to anything nefarious. And, again, Shulman only had three. In the reply brief, it says that one of the matters in David Shulman's declaration, he didn't state who was the one who suggested Commissioner Lowe. And that's at page 36 of the reply, and it says that that was in matter 3436. But that matter was, in fact, disclosed in the original disclosures. But how many were not – how many came about that were not disclosed? Was it eight? There were eight. Okay. So what if the number had been 80, right? What if the number had been 80? Would Moore Shulman have a duty at that point, perhaps a state law duty, to disclose that to the other side? It's not – no, it's not MSM Schaub. No matter how many retentions? Yeah. There is a disclosure requirement, and it's in the judicial canons that it's the judicial officer's duty to – I don't think there's an affirmative duty. And certainly in this case, there's not an affirmative duty to check and make sure the judge is complying with their ethical duties. Another issue – I guess one answer would be if all parties saw that she mistakenly checked the box, any party could have objected and said, let's have disclosure. Correct. Any party could have objected. Any party could have moved, as Nick Vina initially did after the trial, to have updated disclosures. This was through JAMS, and this was their form. They could have at any time requested it. And again, the ethical obligation is not on the lawyers who are – it wasn't on MSM any more than it was on Herbert or any other lawyers to make sure, well, let's see. And again – Is that right, though? I mean, because MSM knows about the retentions, and Mr. Vina does not know about them. He could have asked for them, which he later did, but aren't the parties a little differently situated? I think that the conduct complained here is two things, and you're talking about the first one, which is retaining Commissioner Lowe on other matters. And the second one is disclosure. MSM was doing what lawyers do. This is a family law firm, and she was one of a few family law commissioners that could hear these kinds of cases. The disclosure is that of Commissioner Lowe, and that obligation is not imputed to the attorneys to follow up. These are busy family law attorneys that aren't tasked with making sure that JAMS is providing paperwork to other counsel. Well, what if the private judge had given a statement that was knowingly – that was clearly not correct? For example, I am not retained by MSM on any other matters, and MSM knows that is actually not correct. They have an obligation to – Yeah, I mean, if the court was being dishonest, certainly I think it would be improper for a lawyer to capitalize on that dishonesty. But there's nothing of the sort here. There was – MSM was merely representing their clients. They were retaining one of the few family law judges, temporary judges, that are allowed by the Judicial Council to hear these types of cases. And they – again, they're in the middle of trial, and they don't have an obligation. It's Judge Lowe's obligation to disclose those. They are not tasked with going and – how would they even know that she's not disclosing to opposing counsel? It's just not their job. Thank you, Counsel. Thank you, Your Honors. What about that paperwork question? Is your position that all these firms have to track and disclose, and if that's your position, separate engagements? Did your client's counsel do the same? Does the record reflect? Are all firms tracking and disclosing every time they have a separate engagement? Is that the rule you're asking us for? I don't think so, Your Honor. I don't think that's the rule we're asking for. And by the way, our client's family law counsel had no prior engagements with Judge Lowe for the few years preceding. I think the – I know, but it sounds like the position would have to be – that's your position – that all these lawyers, when they're going to private judges, have to track and disclose if they have separate mediations. How is that not the position? Your Honor, in this case, there were three lawyers at the Moore-Schulman-Moore firm that had mediations with Judge Lowe during its custody trial. Mr. Schulman had three. There's two equity partners in this firm, Mr. Schulman and Mr. Moore. The other mediations were with Mr. Moore, his only other equity partner. And the other mediation was with his only associate, Sarah Baer. So in the facts of this case, all three – and there's a lot of case law we cited about imputed knowledge. And the fact of the matter is – and it's very important that I make sure that the court is aware of this – this court has held, Your Honor, in response to your question, in the Henry Bernard Ninth Circuit 1994 case, counsel for a party who believes a judge's impartiality is reasonably subject to question has not only a professional duty to his clients to raise the matter but an independent responsibility as an officer of the court. And if you look at the Rogozinsky case, the court clearly held in a very similar factually analogous circumstance that a lawyer has a duty to his opposing counsel not to act in a manner that caused the disqualification of a trial judge. So are we getting into the quantity of disclosures? Because what if it had just been one additional matter? Would we be here? Absolutely, yes, because there's a pecuniary interest involved, and it absolutely has to be disclosed. Now, the question then becomes, well, what did the lawyers know? And in the case of Shulman, who lied at his deposition about being a judge, he actually had to certify compliance with Canon 6 repeatedly. He has a higher degree of knowledge about his disclosure obligations. Your Honor, there was a disclosure made. Actually, the only disclosure made by Judge Lowe during the custody trial was that she donated to Amy Feldman's fund after she passed away, another lawyer at Lohr, Shulman & Mohr. That was the same day that they just got back, the prior court day, from mediation with Judge Lowe and Mr. Shulman. She made a disclosure on the record about donating to Amy Feldman's fund and said, that's the only disclosure I'm going to make today. Mr. Shulman was sitting in court when that disclosure was made. Thank you, counsel. Unless my colleagues have any additional questions, I'm going to ask you to wrap up because you're over time. Yes, Your Honor. May I just say one thing, Your Honor? Your Honor, Judge Higginson, it is actually not correct that Mr. Herbert was counsel for Mr. Venna. I just want to clarify that. He was not counsel for Mr. Venna when he appeared before Judge Lowe. Thank you, Your Honor. We're asking for a reversal of the district courts. Thank you, counsel. Thank you both for your argument this morning. The matter is submitted.
judges: Higginson, NGUYEN, BRESS